**COMMONWEALTH of Kentucky, Appellant,**

v.

**David OPELL, Appellee.**

**No. 1997–CA–002984–MR.**

Court of Appeals of Kentucky.

Feb. 19, 1999.

Discretionary Review Denied by Supreme Court Nov. 10, 1999.

**748**

A.B. Chandler III, Attorney General, Christopher Brown Assistant Attorney General, Frankfort, KY, Kurt Kruthoffer, Special Assistant Attorney General, Paintsville, KY, Michael L. Harned, Assistant Attorney General, Frankfort, KY, for Appellant.

Lowell E. Spencer, Paintsville, KY, for Appellee.

Before JOHNSON, KNOX and SCHRODER, Judges.

## OPINION

JOHNSON, Judge.

The Commonwealth has appealed pursuant to Kentucky Revised Statutes (KRS) 22A.020(4) from an order of the Lawrence Circuit Court entered on October 29, 1997, suppressing from evidence all items seized during a search conducted by police officers on August 31, 1996. We reverse and remand.

On August 31, 1996, the appellee, David Opell (Opell), was observed near his home by Fish and Wildlife Officer Carl Salyers (Officer Salyers) tending to several marijuana plants. Officer Salyers made a videotape of Opell riding on a three-wheel vehicle between his residence and the marijuana plants. Officer Salyers reported Opell's activity to Detective Robert Garnes (Detective Garnes) of the Kentucky State Police that same day.

Detective Garnes prepared an affidavit for a search warrant which stated in part as follows:

[O]n the 31st day of August, 1996, at approximately 14:00 p.m., Affiant received information from Carl Salyers from the Department of Fish and Wildlife. Salyers [and] Officer Dale McKenzie observed David Opell tending to marijuana on property close to his residence. Opell drove a three-wheeler from his residence to the marijuana and then back to his residence. According to information received from Salyers, Opell picked leaves from one of the plants and drove back to his residence. Salyers and McKenzie counted more than five marijuana plants growing in the area acting on a tip from an anonymous informer. Salyers and McKenzie spotted marijuana growing from the road.

Detective Garnes also prepared a search warrant which described Opell's residence on McIntire Hollow Road and all vehicles on the premises as places to be searched for marijuana and those items used in the cultivation and distribution of any controlled substances. Detective Garnes could not locate a judge in Lawrence County to authorize the search, but eventually contacted Boyd District Court Judge, the Honorable Marc Rosen, who reviewed the affidavit and signed the search warrant.

Later on August 31, 1996, Detective Garnes, accompanied by Officers Salyers and McKenzie and another unidentified Fish and Wildlife officer, and two sergeants and three troopers from the Kentucky State Police, went to Opell's residence to execute the search warrant. Opell was not at home when the officers arrived. A search of the house resulted in the seizure of seven white pills and a set of 100 gram scales. Outside the house the officers discovered two Honda three-wheel vehicles, one of which was identified by Officer Salyers as the one used by Opell earlier in the day to tend the marijuana plants. Officers checked the serial number on the other three-wheel vehicle through the National Crime Information Center (NCIC) computer and learned it had been stolen. The officers also found and seized a total of 31 marijuana plants

on the property near where Opell had been observed earlier in the day.

As the officers were preparing to leave, Opell pulled into his driveway in a rental car. He was wearing the same clothes he had been wearing when videotaped by Officer Salyers. Opell was immediately placed under arrest by Detective Garnes for the crime of cultivating marijuana and the officers proceeded to search the rented vehicle. They found and seized a pill bottle containing blue pills. In the trunk, they found a bag with $11,025 in cash and a bank envelope.

Opell was indicted by the Lawrence County Grand Jury on February 14, 1997. On May 16, 1997, Opell moved to suppress the evidence obtained from the rental car, alleging it was seized as a result of a "warrantless" search. Since officers had found no contraband in the vehicles he owned, Opell argued they had no probable cause to search the rental car. He moved to suppress any evidence obtained by the officers after checking the serial number on the three-wheel vehicle and argued that the search warrant "[did] not describe any Three–Wheeler [sic] to be seized and [did] not authorize the seizure of any Three–Wheeler [sic]." Finally, he contended that all evidence seized as a result of the issuance of the search warrant should be suppressed because it was "impossible" for the court to determine whether or not the information received from Officer Salyers was "stale."

The Commonwealth responded that the search warrant authorized the officers to search "two particular types of vehicles on the premises as well as '. . . any and all other vehicles on the premises.'" It also argued the car was searched incident to Opell's arrest. The Commonwealth argued it was entitled to seize the three-wheeler, identified by Officer Salyers as the one used by Opell when tending to the marijuana plants, under the authority of *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and that the officers were entitled to check the serial number on the other three-wheeler, although not mentioned in the warrant, pursuant to *Basham v. Commonwealth*, Ky., 675 S.W.2d 376 (1984).

There was no disposition of the motion to suppress at that time. On September 24, 1997, Opell renewed his motion to suppress and amended his motion to include the suppression of the marijuana as also having been seized "near [or] within the curtilage" of his residence during a "warrantless search."

A hearing was conducted on October 10, 1997, during which the following exchange took place between Opell's attorney, Lowell Spencer, and Detective Garnes:

Q 6 Did you prepare that search warrant?

A Yes, I did.

Q 7 Did you prepare the affidavit?

A Yes, I did.

Q 8 Did you include the date that Officer Salyers and McKenzie gave you the information in that affidavit.

A When they gave me the information—

Q 9 The date they gave it to you?

A Yeah, I included that day.

Q 10 Have you got the affidavit in front of you?

A I don't have that.

Q 11 May I have the affidavit? What I'm getting at, the date that they gave you the information?

A Yeah, I included that day.

BY THE COURT: Oh, I'm sorry. Do you need this?

. . . .

[Attorney Spencer reads that portion of the affidavit set forth *supra* at page ——.]

. . . .

Q 13 The date they observed the offense, where does it say in there the day that they observed the offense? You said the date that you received the information was August the 31 st.

A You didn't ask me—

Q 14 When did they observe it?

A They observed it that same day but I didn't put it in the affidavit, though.

Q 15 It isn't in the affidavit?

A No.

Q 16 And the County Attorney didn't ... nobody prepared this ... the County Attorney didn't prepare this for you, did he?

A I prepared it.

Q 17 You prepared it?

A Yes.

Q 18 Why didn't ... you're familiar with preparing affidavits, is that correct?

A I've prepared several.

Q 19 And you knew that you should have put the date in there of the observance, didn't you?

A I put the day that it was given to me.

Q 20 You put the day it was given to you. Correct. But you failed to put the date that McKenzie and Salyers observed the event. Is that correct?

A I didn't put the date on there but it was the same day that I did the affidavit.

In the order from which the Commonwealth has appealed, the trial court found "that the Affidavit for a Search Warrant prepared by Detective R. Garnes failed to state the date that Officer Salyers and Officer McKenzie observed any event and the Commonwealth fail[ed] to introduce evidence supporting a warrantless search exception...." The trial court furthered ordered that all items seized as a result of the search executed on August 31, 1996, be suppressed and, except for the contraband, be returned to Opell.

Before addressing the merits of the Commonwealth's appeal, we will address Opell's argument that we do not have jurisdiction in this matter.[1] Opell insists that the appeal must be dismissed as having been filed untimely. We disagree.

The order from which this appeal has been taken was entered and noted on the clerk's docket sheet as served on counsel of record by first class mail on October 29, 1997, commencing the Commonwealth's time for taking an appeal. Kentucky Rules of Civil Procedure (CR) 73.02(1). Kentucky Rules of Criminal Procedure (RCr) 12.04, which governs when and how appeals are taken, provided at that time, in pertinent part, as follows:

(1) An appeal is taken by filing a notice of appeal in the trial court.

. . . .

(3) The time within which an appeal may be taken shall be ten (10) days after the date of entry of the judgment or order from which it is taken, subject to Rule 12.06. . . . [2]

Thus, pursuant to this rule, the notice of appeal should have been filed no later than Monday, November 10, 1997. The notice of appeal, which is certified as having been mailed on November 7, 1997, contains a stamp and a notation by the clerk that it was "entered" on November 11, 1997. There is no notation on the notice of appeal by the clerk as to when it was received or filed. However, the clerk's docket sheet contains the following notation: "11/11/97—Document Filed—NOTICE OF APPEAL, COMMONWEALTH'S ATTORNEY." If the notice of appeal were actually filed by the appellant on November 11, 1997, the appeal would be, as Opell argues, untimely.

In response to Opell's previous motion to dismiss, the Commonwealth produced the affidavit of Tania S. Holbrook who stated that she personally took the notice of appeal to the United States Post Office in Paintsville on November 7, 1997, and transmitted the document to the clerk of

---

**1.** Opell previously moved this Court to dismiss the appeal as having been untimely filed. The motion was denied by a three-judge panel of this Court on May 13, 1998.

**2.** RCr 12.04 was amended effective January 1, 1999, to allow 30 days for taking an appeal.

the Lawrence Circuit Court by overnight express mail. The Commonwealth also submitted a copy of the tracking envelope which contains the signature of Jodi Parsley, an employee of the clerk's office, and a delivery date of November 8, 1997 (a Saturday), as proof that the notice of appeal was actually received by the clerk two days before it was due and three days before it was actually "filed" by the clerk.

■■■ Opell is correct that the doctrine of substantial compliance has no application to the filing of a notice of appeal. *Fox v. House,* Ky.App., 912 S.W.2d 450 (1995). "Filing a notice of appeal within the prescribed time frame is still mandatory and failure to do so is fatal to an appeal." *Id.* at 451. In *Fox,* the appellant placed her notice of appeal with an overnight mail service within the time for taking an appeal, but the carrier failed to deliver it timely. Clearly, placing a notice of appeal in the mail does not constitute "filing." Because the notice of appeal was not received by the clerk within the appropriate time in that case, Fox's appeal was dismissed. However, in the case *sub judice,* the notice of appeal was received by the clerk within the ten-day jurisdictional time limit. That is all, in this Court's opinion, that is required to constitute "filing" of a pleading such as a notice of appeal. *See* CR 5.05(2). That the clerk neglected to comply with CR 5.05(3) [3] is of no consequence. "Otherwise, the timeliness of the filing would be under the control of the personnel of the clerk's office rather than the appellant. To state the possibility is to reject this construction of the Rule." *United States v. Solly,* 545 F.2d 874, 876 (1976) (filing of notice of appeal under Fed. R.App.P.4(b) construed to mean the date of receipt of the notice rather than the date it is filed by clerk's personnel). Thus, the Commonwealth having demonstrated that its notice of appeal was *timely received* by the clerk of the Lawrence Circuit Court, a fact not challenged by Opell,

we hold that the notice of appeal was *timely filed* as contemplated by RCr 12.04, despite the clerk's notation on her docket sheet to the contrary.

In its appeal, the Commonwealth argues that the trial court erred in suppressing all the evidence seized on August 31, 1996, because of a technical flaw in the affidavit supporting the issuance of the search warrant. Specifically, although the affidavit did not state when Opell was observed taking care of the marijuana plants, the Commonwealth argues that suppression of all the evidence seized was inappropriate under the "good-faith exception" to the exclusionary rule created in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and first recognized in Kentucky in *Crayton v. Commonwealth,* Ky., 846 S.W.2d 684 (1992). We agree.

Our standard of review of an order suppressing evidence is two-fold. The factual findings of the trial court are conclusive if supported by substantial evidence. RCr 9.78. The only finding made by the trial court—that the affidavit did not contain the date Opell was observed tending to his plants—is supported by the evidence and is not in dispute. The second prong of our review involves a *de novo* review to determine whether the trial court's ruling is correct as a matter of law.

> When the findings of fact are supported by substantial evidence, as we conclude they are herein, the question necessarily becomes, "whether the rule of law as applied to the established facts is or is not violated." *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) (citing *Pullman–Standard v. Swint,* 456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 1791, n. 19, 72 L.Ed.2d 66 (1982).

*Adcock v. Commonwealth,* Ky., 967 S.W.2d 6, 8 (1998).

■■■ Under *Leon* and *Crayton,* evidence seized by police should not be ex-

---

**3.** This portion of the rule reads: "The Clerk shall indorse upon every pleading and other papers filed with [her] in an action the date of its filing."

cluded if it is obtained pursuant to a search warrant later determined to be flawed or invalid, if the officers executing the warrant had an "objectively reasonable belief in the sufficiency of the warrant...." *Crayton*, 846 S.W.2d at 687. Exclusion of evidence remains an appropriate remedy only where the circumstances reveal one of the following circumstances: (1) the affidavit contains "false or misleading information"; (2) the judge who issued the search warrant has abandoned his "detached and neutral role"; (3) the affidavit is so lacking in indicia of probable cause such that the officer's reliance cannot be reasonable; or, (4) the warrant is "facially deficient by failing to describe the place to be searched or the thing to be seized." *Id.*, at 687–688. "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695.

■ Having reviewed the evidence in the case *sub judice*, it is clear to this Court that the trial court erred in suppressing the evidence seized by police officers on August 31, 1996. There was no evidence, nor any finding by the trial court, that the flaw in the affidavit would justify exclusion of the evidence under the current standard for exclusion articulated in *Leon* and *Crayton*. Indeed, the flaw in Detective Garnes' affidavit is identical to that found insufficient to justify suppression of evidence by our Supreme Court in *Commonwealth v. Litke*, Ky., 873 S.W.2d 198 (1994). In that case, the Court stated that the affidavit, which contained a deficiency "with regard to time specificity," presented "precisely the type of fact pattern envisioned in Crayton.... Further, had the affiant been required to provide additional time specificity, the facts would have refuted any claim of staleness." *Id.* at 199. We agree with the Commonwealth that the evidence at the suppression hearing in the instant case likewise refuted any claim of staleness. Accordingly, under the authorities discussed above, we hold as a matter of law that the evidence should not have been suppressed.

Opell has not addressed the merits of the Commonwealth's arguments concerning the good-faith exception to the exclusionary rule. The only argument Opell makes in this regard is that "the trial court was not given an opportunity to make any ruling on a good faith exception" and that the Commonwealth did not thereby properly preserve the issue for review. However, the fact that the good-faith exception was not raised or addressed by the trial court was no impediment in *Litke*. In that case, the trial court did not consider the good-faith exception as its order suppressing the evidence pre-dated *Crayton*. Nevertheless, the Supreme Court determined that the evidence should not have been suppressed as a matter of law. Having determined that the trial court's suppression of the evidence seized in this case was likewise erroneous as matter of law, no purpose would be served to remand the matter to give the trial court an opportunity to consider the good-faith exception issue.

Accordingly, the order is reversed and the matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.