**Charles STEWART, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 1999–CA–001343–MR.

Court of Appeals of Kentucky.

July 28, 2000.

Discretionary Review Denied
by Supreme Court June 7, 2001.

Christopher F. Polk, Louisville, Kentucky, for Appellant.

A.B. Chandler III, Attorney General, John E. Zak Assistant Attorney General, Frankfort, Kentucky, for Appellee.

BEFORE: HUDDLESTON, JOHNSON and KNOPF, Judges.

## OPINION

HUDDLESTON, Judge:

Charles Stewart appeals from a judgment entered by Trigg Circuit Court following his conditional plea[1] of guilty to three drug possession charges in which he reserved the right to appeal the circuit court's denial of his motion to suppress evidence. We affirm.

On the night of November 28, 1997, the Cadiz Police Department received a tip from an anonymous telephone caller that Stewart and a female companion, Barbara Grubbs, had just purchased crack cocaine and would be arriving in Cadiz at approximately 10:00 p.m. The caller stated the pair was traveling in Grubbs's vehicle from the direction of Hopkinsville, and that Stewart would be carrying the cocaine in his mouth. At approximately 10:46 p.m., Officer Thomas Moore and Officer Roger Knight spotted Grubbs's vehicle traveling westward from the direction of Hopkinsville into Cadiz on Main Street. Just after the police officers began to follow the suspects, they pulled off the roadway into a Minit Mart store. The police saw Stewart leave the car and walk across the street to a motel. The officers pulled into the parking lot of the motel and asked Stewart to approach them. As Stewart walked toward them, he asked, "What's wrong?"

Officer Moore informed Stewart that the police had received a call earlier that he was possibly carrying crack cocaine on him. Officer Moore asked him if he could search him, but Stewart said no. Officer Knight then asked Stewart what he had in his waistband. Stewart pulled out an object and as he handed it to Officer Knight, he told him that it was his pill bottle. Officer Moore asked Stewart to open his mouth, and he complied. Because the officer had some difficulty at first seeing inside Stewart's mouth, he asked him to open his mouth again. This time Officer Moore saw an object he believed was crack cocaine sticking to the roof of Stewart's mouth, but before the officer could retrieve it, Stewart had swallowed the object. Stewart later indicated to the officers that the object was cocaine. Stewart was arrested on several drug charges. A subsequent laboratory test indicated that the pill bottle contained several small samples of crack cocaine and marijuana.

In May 1998, a Trigg County grand jury indicted Stewart on one felony count of first-degree possession of a controlled substance (cocaine), first offense,[2] one mis-

---

1. Ky. R.Crim. Proc. (RCr) 8.09.

2. Ky.Rev.Stat. (KRS) 218A.1415.

demeanor count of possession of drug paraphernalia, first offense,[3] and one misdemeanor count of possession of marijuana.[4] Stewart filed a motion to suppress the drug evidence alleging that it was the product of an illegal search and seizure. The Commonwealth filed a response arguing the search and seizure were proper. The parties agreed to submit the issue to the circuit court based on the testimony of Officer Moore given at the preliminary hearing in district court. The circuit court denied the motion based primarily on the cases of *Alabama v. White*[5] and *Illinois v. Gates.*[6]

Subsequently, Stewart entered a conditional guilty plea pursuant to RCr 8.09 to the three drug possession counts under which he reserved the right to appeal the circuit court's denial of his motion to suppress. The circuit court sentenced Stewart consistent with the Commonwealth's recommendation to serve three years in prison on the felony count of possession of a controlled substance (cocaine), first offense, and twelve months on each of the two misdemeanor counts, all to run concurrently for a total sentence of three years.

Stewart argues on appeal that the circuit court erred in denying his motion to suppress because the police search violated the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution. He contends that the search was conducted without reasonable suspicion or probable cause and exceeded the narrow scope for protective searches authorized by *Terry v. Ohio.*[7] Thus, Stewart concludes, the drug evidence was seized as part of an illegal search and must be suppressed. We disagree.

Generally, the police may not search an individual without a warrant unless it can be shown that the search falls within one of the recognized exceptions to the rule.[8] The recognized exceptions include: (1) a consensual search; (2) a plain view search; (3) a search incident to an arrest; (4) a probable cause search; (5) a search based on exigent circumstances; and (6) an inventory search.[9] However, in *Terry v. Ohio,* the United States Supreme Court balanced individual liberty interests and the public safety interest in recognizing a limited exception to the warrant requirement by sanctioning both investigatory stops and restricted pat-down searches of suspects. Police officers may briefly detain an individual on the street, even though there is no probable cause to arrest him, if there is a reasonable suspicion that criminal activity is afoot.[10] The existence of a reasonable articulable suspicion or probable cause is based on an analysis of all the facts and the totality of the circum-

3. KRS 218A.500(2).

4. KRS 218A.1422.

5. 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

6. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

7. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

8. *Cook v. Commonwealth,* Ky., 826 S.W.2d 329 (1992)(citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

9. *See Richardson v. Commonwealth,* Ky.App., 975 S.W.2d 932 (1998); *Cormney v. Commonwealth,* Ky.App., 943 S.W.2d 629 (1996); *Clark v. Commonwealth,* Ky.App., 868 S.W.2d 101 (1993).

10. *Terry,* supra, n. 7, 392 U.S. at 20–23, 88 S.Ct. at 1878–81. *See also Taylor v. Commonwealth,* Ky., 987 S.W.2d 302 (1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 239, 145 L.Ed.2d 200 (1999).

stances.[11] The standard for reasonable suspicion is less demanding than the grounds for probable cause.[12]

■ Our standard of review of a circuit court's decision on a suppression motion following a hearing is twofold. First, the factual findings of the court are conclusive if they are supported by substantial evidence.[13] The second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law.[14] Kentucky has adopted the standard of review approach articulated by the Supreme Court in *Ornelas v. United States*,[15] where the Court said that:

> [A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.[16]

■ Stewart argues that the police did not have a reasonable articulable suspicion to conduct an investigatory stop. He asserts that the anonymous telephone tip was so lacking in specific detail that it failed to rise to the level of reasonable suspicion.

■ In *Alabama v. White*,[17] the Supreme Court discussed the standards applicable to establishing reasonable articulable suspicion with respect to an anonymous telephone tip. The Court held that even when an unverified tip would have been insufficient to establish probable cause for an arrest or search warrant, where the information supplied carries sufficient "indicia of reliability," it would support a forcible investigatory stop under *Terry*.[18] The Court held that the "totality of the circumstances" approach adopted in *Illinois v. Gates*,[19] applied to the reasonable-suspicion analysis for an anonymous tip. "Reasonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability."[20] The information must be viewed based on the personal observation and independent investigation of the police that would tend to corroborate significant, but not necessarily all, of the facts supplied by the informant. Another impor-

**11.** *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1994), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996); *Taylor*, 987 S.W.2d at 305; *Simpson v. Commonwealth*, Ky.App., 834 S.W.2d 686 (1992).

**12.** *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

**13.** RCr 9.78; *Adcock v. Commonwealth*, Ky., 967 S.W.2d 6, 8 (1998).

**14.** *See Adcock, supra,* n. 13, at 8; *Commonwealth v. Opell*, Ky.App., 3 S.W.3d 747, 751 (1999).

**15.** 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**16.** *Id.* at 698–700, 116 S.Ct. at 1663. For Kentucky cases applying *Ornelas* see *Adcock, supra,* n. 13; *Richardson v. Commonwealth, supra,* n. 9; *Commonwealth v. Opell, supra,* n. 14.

**17.** 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

**18.** *Id.* at 328, 110 S.Ct. at 2415. *See also Taylor v. Commonwealth, supra,* n. 10; *Raglin v. Commonwealth*, Ky., 812 S.W.2d 494 (1991); *Graham v. Commonwealth*, Ky.App., 667 S.W.2d 697 (1983).

**19.** 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**20.** *Alabama v. White, supra,* n. 17, 496 U.S. at 330, 110 S.Ct. at 2416.

tant factor involves whether the information contains facts and conditions as to future actions of third parties ordinarily not easily predicted.[21]

Recently the United States Supreme Court revisited the area of the law involving searches based on anonymous tips. In *Florida v. J. L.*,[22] the police received information from an anonymous telephone caller that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Upon arriving at the bus stop, the police saw three black males " 'just hanging out [there]'." [23] When the police frisked J.L., who was a juvenile and was wearing a plaid shirt, they discovered a handgun in his pocket. J.L. was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. Subsequently, the trial court granted J.L.'s motion to suppress the gun as the fruit of an unlawful search in violation of the 4th Amendment, and the Florida Supreme Court affirmed the trial court.

In agreeing with the state court, the United States Supreme Court reaffirmed its decision in *Alabama v. White* and distinguished the situation in *J.L.* based on the facts. The Court relied in large part on the predictive aspects of the information, rather than a particular physical description of the suspect, as a major element in facilitating corroboration by the police and creating " 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' " [24] The Court stated:

> The tip in the instant case lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.[25]

In the case under consideration, a substantial portion of the information supplied by the anonymous telephone caller was verified by the personal observations of the police. This included futuristic or predictive information that Stewart and a female companion would be arriving in Cadiz from the direction of Hopkinsville sometime after 10:00 p.m. The caller also provided information specifically identifying Stewart and his companion, Barbara Grubbs, and the fact that they would be in her automobile.

We agree with the trial court that while this may be a close question, there was

---

**21.** *Id.* at 332, 110 S.Ct. at 2417.

**22.** 529 U.S. ——, 120 S.Ct. 1375, 68 USLW 4236 (Mar. 28, 2000). This case was decided after the trial court rendered its decision.

**23.** 529 U.S. at ——, 120 S.Ct. at 1377.

**24.** *Id.*, 529 U.S. at ——, 120 S.Ct. at 1378 (quoting *Alabama v. White, supra,* n. 17, at 496 U.S. at 327, 110 S.Ct. at 2414 (1990)).

**25.** *Id.*, 529 U.S. at ——, 120 S.Ct. at 1379.

sufficient corroboration of significant facts to create reasonable suspicion that Stewart was in possession of illegal drugs. The information included several specific details and predictive information that under the totality of the circumstances, the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to satisfy the lesser reasonable suspicion standard to justify an investigatory stop. The facts in this case are distinguishable from those in *Florida v. J.L.* and are closer to those in *Alabama v. White.*

 Having concluded that the stop was authorized, the seizure of the cocaine and marijuana contained in the pill bottle necessarily was proper. Stewart voluntarily gave the police officers the pill bottle after they asked him about the bulge in his waistband. There is no indication that Stewart was coerced, and the bulge was apparent to both officers. This seizure clearly fell within the consent to search exception to the search warrant requirement. Stewart's complaint that the police conduct exceeded the narrow protective purposes of *Terry* by including an illegal search of his mouth is irrelevant because the police did not recover or seize any evidence from Stewart's mouth. Similarly, the fact that the police did not actually open the pill bottle until after searching Stewart's mouth is inconsequential. The police had possession of the pill bottle and its contents *before* Officer Moore attempted to search Stewart's mouth. Consequently, the trial court did not err in denying Stewart's motion to suppress the evidence of drugs found in the pill bottle.

The order denying Stewart's motion to suppress and the judgment of conviction are affirmed.

ALL CONCUR.