# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

2005-SC-000820-MR

DATE April 10, 08 Elia Crawhy D.C.

ROBERT HOWARD BURNETT II                                    APPELLANT

                        ON APPEAL FROM FAYETTE CIRCUIT COURT
V.                      HONORABLE PAMELA GOODWINE, JUDGE
                        NO. 05-CR-000207

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The sole issue in this matter of right appeal is whether the trial court properly denied Appellant's motion to suppress the statement he gave to the police after the Appellant contends he invoked his right to counsel. Upon review of the police interview in its entirety, we adjudge that, although Appellant did invoke his right to counsel, he waived that right when he immediately thereafter volunteered statements that were not in response to police questioning. Hence, we affirm the denial of the motion to suppress.

In February of 2005, Robert Howard Burnett II, was indicted for offenses involving his son T.B., occurring between 2000 and 2004. Burnett was indicted in the Fayette Circuit Court for: First-Degree Sodomy; Use of a Minor in Sexual Performance; First-Degree Sexual Abuse; and Second-Degree Persistent Felony Offender (PFO II). The PFO II count was based on two convictions of child molestation in 1996 in Indiana.

Pursuant to a plea agreement, Burnett entered a conditional guilty plea on August 5, 2005 to First-Degree Sodomy and PFO II, and was sentenced to thirty (30) years imprisonment.

The sole issue before us is whether the statements made by Burnett to the police should have been suppressed. Detective David Hester of the Lexington Fayette Urban County Government Division of Police, Crimes Against Children Unit, testified that he read Burnett his <u>Miranda</u> rights at the beginning of interrogation. Detective Hester believed Burnett did not invoke his right to counsel at any time during the interview. However, eleven minutes into the interview, questionable statements were made by Burnett that Burnett maintains were requests for counsel. The pertinent portion of the interview is as follows:

| Detective Hester: | . . . but we're talking about your son now and whatever happened with the others, I don't, you know, I wouldn't really expect much remorse or concern for their well being, but you're dealing with your own blood now and I'm offering you an opportunity to do right by your son, okay? So what went on? When did all this start with [T.B.]? |
| --- | --- |
| Burnett: | **I don't know what to say. I don't know what to say. I was always told that I wasn't supposed to say nothing, not unless an attorney was present. I don't know. I ain't never been in an interrogation room. I don't know what to say.** (emphasis added). |
| Detective Hester: | Understand this, based on . . . |
| Burnett: | **I'm not really with the laws and stuff, I don't know.** (emphasis added). |
| Detective Hester: | Well, like I told you before, and you've got, you know, those rights, okay, but here's what's gonna happen, okay. Based on what [T.B.]'s told me, the things he's described, I'm prepared to charge you today with the things |

2

that happened to [T.B.] And I can go to the Commonwealth Attorney and I can say, you know, obviously they're going to know about your record, and I can say you got another one here but he's repentant, he's sorry for this one, and he wants to help his son get through it, for the mistakes that he made. Or I can go back, you know, and we can work out for running stuff concurrent, you know, with whatever's happening in Indiana or things like that. I can somewhat advocate for you. Those decisions are made by them and by the judge, and not by me, but I can go in there and advocate for some sort of deal where you don't do fifteen (15) years and then, plus twenty-five (25) or thirty (30), after you get done with that you come back to Kentucky. I can work, you know, let's do fifteen (15) that runs concurrent with what he's gonna be facing up in Indiana and be done with it. Or I can say that, you know, I came in and I offered him an opportunity to show remorse, and show repentance, and he didn't take it. And we've gotta make sure that, you know, he's only thirty (30), what thirty-six (36), thirty-five (35)?

Burnett: Thirty-five (35).

Detective Hester: Fifteen (15), only makes you fifty (50). I gotta make sure you get another twenty-five (25) on top of that so that you're at least seventy-five (75) before the time you get out. That's where we stand and . . . .

Burnett: **I understand that. I'm just saying, I don't want to do anything without the law.** (emphasis added).

At this point, a few seconds elapse without Detective Hester saying anything, and then Burnett breaks down, begins crying and volunteers the following:

Burnett: I never meant to hurt my son. It just keeps coming back. It just keeps coming back.

Detective Hester: You got some . . .

Burnett: I swear I try to fight it, I try . . .

3

Detective Hester:    Uh huh.

Burnett:    but it just keeps coming back.  I pray to God
just make it stop, but it just keeps happening.

At this point, Detective Hester begins talking about T.B. and what T.B. told him.

Burnett makes no further reference to an attorney or "the law" and continues to provide

more information about the offenses.  Burnett ultimately made a written statement in the

form of a letter to T.B. at the suggestion of Detective Hester.  Detective Hester gave

Burnett three breaks during the interrogation to have a drink of water, call his sister, and

write the letter.  However, these breaks were all given after the above conversation took

place.

On May 24, 2005, a hearing was held on Burnett's motion to suppress the

statements made to Detective Hester.  Burnett argued that Hester violated his Miranda

rights when he failed to respect his invocation of his right to counsel.  The main issue is

whether the statements Burnett made prior to his confession were sufficient to

constitute an invocation of his right to counsel.

The trial judge watched a tape of the interrogation and found Burnett nodded

affirmatively when asked if he understood his Miranda rights as read by Detective

Hester.  The judge recognized that on three different occasions, Detective Hester gave

Burnett the option to reconsider when he took a break, called his sister, and allowed

Burnett to write a letter.  After each break, Burnett was the one to instigate the

conversation.  The judge made a final ruling that Burnett "never indicated unequivocally

that he no longer wished to be questioned, and as a result, was not questioned in

violation of Miranda."  In reviewing a trial court's ruling on a suppression motion, the trial

court's findings of fact will be deemed conclusive if they are supported by substantial

4

evidence. Adcock v. Commonwealth, 967 S.W.2d 6, 8 (Ky. 1998); Stewart v. Commonwealth, 44 S.W.3d 376, 380 (Ky.App. 2000); RCr 9.78. However, the trial court's conclusions of law will be reviewed *de novo*. Id.; Welch v. Commonwealth, 149 S.W.3d 407, 409 (Ky. 2004).

Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself . . . ." In Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that when an accused is interrogated while in police custody, he is entitled to certain procedural safeguards to protect his constitutional right against self-incrimination. The Miranda Court went on to delineate those procedural safeguards:

> Prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. **If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.** Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

Id. at 444-45 (emphasis added). One who seeks counsel "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). The request for counsel must be "unambiguous and unequivocal." Dean v. Commonwealth,

5

844 S.W.2d 417, 420 (Ky. 1992); see also Jackson v. Commonwealth, 187 S.W.3d 300, 306 (Ky. 2006) (using a "clear and unequivocal" standard). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." Davis, 512 U.S. at 459.

Burnett argues that when he told Detective Hester:

> I don't know what to say. I was always told that I wasn't supposed to say nothing, not unless an attorney was present. I don't know. I ain't never been in an interrogation room, I don't know what to say . . . . I'm not really with the laws and stuff, I don't know[,]

he was attempting to invoke his right to counsel. Burnett maintains that Detective Hester should have stopped the interrogation at that point, and asked Burnett if he was invoking his right to counsel. Rather than stopping, the interview continued, and Burnett asserts that he was then badgered into giving a statement. Burnett claims that his subsequent statement "I don't want to do anything without the law," was also an expression of his desire for counsel to be present during the interrogation. Burnett argues that at both points in the interview, his requests for counsel were unambiguous and unequivocal, and yet Hester continued to question him. Therefore, allowing the confession would be in direct violation of his Fifth and Fourteenth Amendment right to have counsel present during a custodial interrogation.

The Commonwealth contends that the statements at issue by Burnett were neither unambiguous nor unequivocal and thus did not constitute an invocation of his right to counsel. Hence, it was reasonable for Detective Hester to continue the interrogation. However, in the alternative, the Commonwealth argues that if this Court

6

adjudges that Burnett did invoke his right to counsel with his statements early on in the interview, he subsequently waived that right when he broke down and voluntarily confessed not in response to any further questioning by Detective Hester.

As to Burnett's first statement:

> I don't know what to say. I was always told that I wasn't supposed to say nothing, not unless an attorney was present. I don't know. I ain't never been in an interrogation room, I don't know what to say. . . . I'm not really with the laws and stuff, I don't know[,]

Detective Hester testified at the hearing that he interpreted that statement as Burnett being unsure about whether he wanted an attorney. We agree that this statement did not constitute an unambiguous and unequivocal request for counsel. Although Burnett used the word "attorney", his statement was an expression of uncertainty about whether he wanted or needed an attorney, which would at best be ambiguous and equivocal. This case is akin to Dean, 844 S.W.2d at 419, wherein during interrogation, the accused inquired, "[S]hould I have somebody here? I don't know." This Court held that such a statement was not sufficiently unambiguous and unequivocal to invoke the accused's right to counsel. Id. at 420. Likewise, in Davis, 512 U.S. at 455-59, the statement, "Maybe I should talk to a lawyer" was held not to be an unambiguous and unequivocal request for counsel. Accordingly, in the instant case, it was not improper for the detective to continue speaking to Burnett after this statement.

When asked at the hearing what Burnett meant by his second statement "I don't want to do anything without the law," Burnett responded by saying, "I was, I guess wanting to have me an attorney there when I insinuated to him . . . I kind of got choked up at the same time, but I was asking for an attorney." Detective Hester stated that he did not take that statement as a request for an attorney. Hester testified that he "wasn't

7

sure what exactly he meant by that. He immediately went into beginning his confession." In our view, the statement "I don't want to do anything without the law," when coupled with his earlier reference to an attorney, was a sufficiently clear expression of Burnett's desire for an attorney, and a reasonable officer would have understood that the accused wanted to consult with an attorney before he said anything else. Although Burnett used the word "law" and not "attorney" or "lawyer", we nevertheless believe a reasonable police officer would have known under the circumstances that Burnett wanted to consult with an attorney before giving a statement. Detective Hester had already testified that he was aware that Burnett was unsure about whether he wanted an attorney from Burnett's first statement. And, unlike Burnett's first statement questioning whether he wanted or needed an attorney, this second statement did not express any uncertainty. "[A] suspect need not speak with the discrimination of an Oxford don." Davis, 512 U.S. at 459 (citation omitted). Thus, the trial court erred in its legal conclusion that Burnett did not make an unequivocal request to speak to a lawyer. However, we view this error as harmless because we adjudge that Burnett subsequently waived his right to counsel when he immediately thereafter made a spontaneous confession to the crime. RCr 9.24.

Once a defendant invokes his Miranda right, all questioning of the suspect must cease unless the suspect himself "initiates" further communication. Edwards v. Arizona, 451 U.S 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378, 386 (1981). "When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to police-initiated interrogation after being again advised of his rights." Id. at 477. In order to establish a valid waiver of the right to counsel "the accused himself [must] initiate[]

8

further communication, exchanges, or conversations with the police." Id. at 484-85. If the accused speaks after invoking his right to counsel, the two-part test set out in Smith v. Illinois, 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984), is applied to determine whether the subsequent statement constituted a waiver of the invocation of the right to counsel. Smith v. Commonwealth, 920 S.W.2d 514, 517 (Ky. 1995). The two-part test requires the court to first identify whether the accused actually invoked his right to counsel, and secondly, "if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." Smith, 469 U.S. at 95.

Burnett contends that after he invoked his right to counsel, he did not thereafter waive the right by initiating further discussion with Detective Hester, because the statement was given in response to the previous pressured and overreaching questioning by the detective. Burnett also maintains that when he broke down and confessed, he was not knowingly and intelligently waiving the right he had just invoked.

In viewing the interrogation, after Burnett's statement that he did not "want to do anything without the law," there is a short pause during which Detective Hester says nothing. It is only after Burnett breaks down and states that he did not mean to hurt his son and that it just keeps coming back, that Detective Hester begins speaking again.

In determining whether the accused initiated the conversation pursuant to the two-part test in Smith v. Illinois, this Court has interpreted "initiated" in the ordinary sense of the word. Smith, 920 S.W.2d at 518 (citing Oregon v. Bradshaw, 462 U.S. 1039, 1045, 103 S. Ct. 2830, 2835, 77 L. Ed. 2d 405, 412 (1984)). During the interrogation in Skinner v. Commonwealth, 864 S.W.2d 290 (Ky. 1993), the officer

9

ceased questioning after the accused invoked his right to counsel, but shortly thereafter, the accused made incriminating statements about the crime not in response to questioning. This Court affirmed the denial of the suppression motion, adjudging that the accused initiated the conversation when he volunteered statements that were not in response to interrogation. Id. at 295; see also Cummings v. Commonwealth, 226 S.W.3d 62, 65-66 (Ky. 2007). Similarly, in the present case, when Burnett became emotional and made the incriminating statements at issue - that he didn't mean to hurt his son and that it just keeps coming back - the statements were not in response to a question by Detective Hester. As stated above, as soon as Burnett stated he did not want to do anything without the law, Detective Hester said nothing more until after Burnett broke down and made the initial incriminating statements.

As to Burnett's claim that the statement was not made knowingly and intelligently, the record refutes this claim. Burnett was read his Miranda rights and acknowledged that he understood those rights. See Ragland v. Commonwealth, 191 S.W.3d 569, 586 (Ky. 2006).

For the reasons stated above, the judgment of the Fayette Circuit Court is hereby affirmed.

All Sitting. Lambert, C.J., Abramson, Schroder, and Scott, JJ., concur. Noble, J., concurs in result only by separate opinion in which Cunningham and Minton, JJ., join.

10

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Department of Public Advocacy
100 Fair Oaks Lane
Suite 302
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Michael A. Nickles, Jr.
Assistant Attorney General
Room 118
Capitol Building
Frankfort, KY 40601

# Supreme Court of Kentucky

2005-SC-000820-MR

ROBERT HOWARD BURNETT II             APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.         HONORABLE PAMELA GOODWINE, JUDGE
NO. 05-CR-000207

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION BY JUSTICE NOBLE**

**<u>CONCURRING IN RESULT ONLY</u>**

The majority finds that the Appellant did make an "unambiguous and unequivocal" request for an attorney during his interrogation, but that he waived that right by immediately volunteering incriminating statements that were not in response to police questioning. I agree that Appellant voluntarily made the statements to police, and thus there is no error. However, given that his "request" for an attorney was not direct, and could only be <u>inferred</u> if several of his statements are read together, I cannot say that there was a clear request for an attorney under the facts of this case. Further, given that such a request was lacking, Officer Hester could have continued questioning Appellant, but either did not or just did not have time to continue questioning because Appellant immediately caved and started making incriminating statements. There is thus no need for this Court to engage in a discussion of whether he requested an attorney, because this is not germane to the resolution of the case, and may be viewed as an extension of the case law on what is "unambiguous and unequivocal"—words that have strong and clear meaning that this application clouds. If reasonable minds could

differ on whether a request for an attorney had been made, the language is perforce ambiguous or equivocal. In fairness to an interrogating officer, it must be understood that the officer is responding to the last statement made by a witness, not the entire context of what has been said over the course of the whole exchange, as we have the luxury of doing. It is, unequivocally, better practice to err on the side of giving access to counsel during interrogations, but the law does not require that questioning cease when a suspect "might be invoking the right to counsel . . . ." Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362, (1994); Ragland v. Commonwealth, 191 S.W.3d 569, 586-87 (Ky. 2006).

Cunningham and Minton, JJ., join.