RENDERED:  SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000482-MR

ANTHONY CHAMBERS                                              APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.          HONORABLE BRANDY OLIVER BROWN, JUDGE
ACTION NO. 18-CR-00150

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

MAZE, JUDGE:  Anthony Chambers appeals from a judgment of conviction by

the Madison Circuit Court following a conditional guilty plea pursuant to RCr[1]

8.09.  He argues that the trial court erred by denying his motion to suppress

---

[1] Kentucky Rules of Criminal Procedure.

evidence obtained during a traffic stop and pat-down search. We conclude that the officers had a reasonable and articulable suspicion of criminal activity sufficient to warrant both the stop and pat-down search. We further conclude that the evidence was properly subject to seizure under the plain-feel and plain-view exceptions. Hence, we affirm.

On February 21, 2018, a Madison County grand jury returned an indictment charging Chambers with first-degree trafficking in a controlled substance, less than four grams cocaine, and being a persistent felony offender in the first degree (PFO I). Thereafter, Chambers filed a motion to suppress evidence seized from him during a traffic stop. The trial court then conducted a suppression hearing at which the following evidence was presented.

During the afternoon of January 17, 2018, deputies from the Madison County Sheriff's Office were investigating complaints of drug activity at an apartment on Turpin Drive in Richmond. Deputy Kevin Crutcher observed a high volume of traffic in and out of the apartment. At one point, Deputy Crutcher saw a white female pull up in a car, get out, and enter the apartment. A few minutes later, he saw the female leave the residence with a black male. The two got into the female's car and left.

Deputy Crutcher followed the car and decided to stop the vehicle. As soon as the vehicle came to a stop, the passenger door opened and the male ran.

Deputy Crutcher pursued the male on foot, but lost sight of him after a short chase. Deputy Crutcher returned to the vehicle and spoke to the female driver, who told him that the male's name was D'Anthony Chambers. The female also advised that the male did not have a firearm. Deputy Crutcher radioed in his description of the subject as "Anthony Chambers," a black male in his early-to-mid twenties, wearing loose grey sweatpants and a grey sweatshirt. He further reported that the suspect was heading in the direction of the Eastern Hills neighborhood. A few minutes later, Deputy Crutcher corrected the name to "D'Anthony Chambers."

Deputy Mike Carmen was at the Sheriff's Office when he heard the call from Deputy Crutcher. He drove out toward Eastern Hills, where he met up with Sergeant Devin Thomas of the Richmond Police Department. While patrolling the area, Deputy Carmen noticed a silver Cadillac pull up to an intersection and stop at a stop sign. The driver looked at Deputy Carmen, then made a right-hand turn back into Eastern Hills. Both Deputy Carmen and Sgt. Thomas believed that the right-hand turn was unusual because the street was a loop leading back to the same intersection. The Cadillac returned to the stop sign and made a left turn toward the exit of the Eastern Hills neighborhood. As the vehicle passed his position, Deputy Carmen saw two black males, one wearing a grey sweatsuit jacket.

At 3:27 p.m., approximately twenty-two minutes after receiving the initial report, Deputy Carmen activated his emergency lights and stopped the Cadillac. He and Sgt. Thomas approached the vehicle. Deputy Carmen again noticed that the driver was wearing a grey sweatsuit. He asked the driver if his name was Anthony Chambers. The driver was initially hesitant to answer and refused to turn off the vehicle until directed by the officers. After turning off the ignition, the driver answered that his name was Anthony Chambers. The officers directed the men to get out of the vehicle. The officers noted that Chambers was wearing grey sweatpants.

Sgt. Thomas then handcuffed Chambers and conducted a pat-down search. He observed several items in Chambers' pocket and felt a large bulge. Upon extracting the items, Sgt. Thomas found $1,420 in cash, mostly in $20 bills, and a bag containing a white, powdery substance. The substance later tested positive as 20 grams of cocaine. Deputy Crutcher arrived at the scene and advised the officers that Chambers was not the person he had seen fleeing the earlier scene.

After considering the evidence presented at the hearing, the trial court denied the motion to suppress. The court noted that the driver of the vehicle matched the general description of the suspect who fled the earlier stop. In addition, the officers spotted the vehicle in the vicinity where the suspect was heading. The court also relied upon the officers' observations that the driver was

acting oddly, turning back onto a subdivision loop after seeing the police cars. And the court also noted the driver's lack of cooperation once the vehicle was stopped. Based on the totality of the circumstances, the court concluded that the officers had a reasonable and articulable suspicion for the investigatory stop. For the same reasons, the court found that the officers were justified in conducting the pat-down search of Chambers.

Thereafter, Chambers entered a conditional guilty plea to trafficking in a controlled substance and an amended count of PFO II, reserving his right to appeal the denial of his suppression motion. The trial court sentenced Chambers to a total of ten years' imprisonment. This appeal followed.

RCr 8.27 sets out the procedure for conducting a suppression hearing. When the trial court conducts a hearing, our standard of review is two-fold. "First, the factual findings of the court are conclusive if they are supported by substantial evidence[;]" and second, this Court conducts "a *de novo* review to determine whether the [trial] court's decision is correct as a matter of law." *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998) and *Commonwealth v. Opell*, 3 S.W.3d 747, 751 (Ky. App. 1999)).

Chambers first argues that the police lacked a reasonable and articulable suspicion to stop his vehicle. In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct.

1868, 20 L. Ed. 2d 889 (1968), the United States Supreme Court recognized an exception to the warrant requirement by sanctioning both investigatory stops and limited pat-down searches of suspects. When there is a reasonable suspicion that criminal activity is afoot, a police officer may briefly detain an individual on the street, even though there is no probable cause to arrest him. *Id.*, 392 U.S. at 30-31, 88 S. Ct. at 1884-85. But to justify a stop, the officer must be able to articulate more than a mere "inchoate and unparticularized suspicion or 'hunch[.]'" *Id.*, 392 U.S. at 27, 88 S. Ct. at 1883.

Rather, the objective justification for the officer's actions must be measured in light of the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585-86, 104 L. Ed. 2d 1 (1989). When considering the totality of the circumstances, a reviewing court should take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation. Courts must consider all of the officers' observations and give due weight to the inferences and deductions drawn by trained law enforcement officers. *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S. Ct. 744, 750-51, 151 L. Ed. 2d 740 (2002). Furthermore, the likelihood of criminal activity need not rise to the level required for probable cause and "it falls considerably short of satisfying a preponderance of the evidence standard."

*Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008) (quoting *Arvizu*, 534 U.S. at 274, 122 S. Ct. at 751).

Chambers argues that the vague and general description provided by Deputy Crutcher was insufficient to provide Deputy Carmen reasonable suspicion that the driver of the Cadillac was the person who fled the earlier stop. We agree that the mere similarity in clothing worn by Chambers and the fleeing suspect was not sufficient, standing alone, to support a *Terry* stop. *See Collins v. Commonwealth*, 142 S.W.3d 113, 116 (Ky. 2004). However, Deputy Carmen and Sgt. Thomas noted additional factors to support their decision to stop the vehicle.

Most notably, Deputy Carmen observed Chambers turn onto a closed loop back into the Eastern Hills subdivision after seeing the police car. This conduct could be interpreted as either an attempt to avoid the police or a lack of familiarity with the area. Either interpretation would be consistent with the description of a suspect who had fled toward the Eastern Hills neighborhood. The fact that this behavior may have an innocent explanation did not deprive the police of the ability to entertain a reasonable suspicion that criminal activity had occurred. *Simpson v. Commonwealth*, 834 S.W.2d 686, 688 (Ky. App. 1992). When considered with the close time frame and the similar clothing, we conclude that the officers based the stop on more than a hunch.

We also agree with the trial court that Chambers' behavior following the stop justified the pat-down search. Chambers appeared to be nervous, refused to turn the car off, and was hesitant to give his name. In addition, he identified himself as "Anthony Chambers," which was the name of the fleeing suspect that Deputy Crutcher initially reported. Although Deputy Crutcher reported that his suspect did not have a weapon, the fact that Chambers was driving a vehicle with a passenger supported an inference that he may have acquired one. In light of the totality of the circumstances, we conclude that Sgt. Thomas had a reasonable and articulable suspicion to warrant the pat-down search.

Finally, Chambers argues that the pat-down search exceeded the reasonable scope necessary to determine whether he had a weapon. Frisking a suspect during a *Terry* stop is strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Commonwealth v. Crowder*, 884 S.W.2d 649, 651 (Ky. 1994). Chambers contends that the lump in his pocket felt by Sgt. Thomas was plainly not a weapon. Consequently, Chambers argues that Sgt. Thomas' removal of the items from his pocket was unreasonable and requires suppression of the evidence.

However, "[w]hen a police officer lawfully pats down the outer clothing of a suspect and feels an object whose contour or mass makes its identity immediately apparent, there is no violation of privacy beyond that already

permitted by the patdown search for weapons." *Commonwealth v. Whitmore*, 92 S.W.3d 76, 80 (Ky. 2002) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)). In this case, Sgt. Thomas testified that he could see the cash and bag of cocaine through the loose opening in Chambers' pocket. In light of his plain feel and view of the items, Sgt. Thomas did not exceed the scope of a *Terry* pat-down by removing the items once he could clearly identify them as contraband. Therefore, the trial court did not err by denying the motion to suppress the evidence seized.

Accordingly, we affirm the judgment of the Madison Circuit Court.

DIXON, JUDGE, CONCURS.

CLAYTON, CHIEF JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

M. Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky