RENDERED: JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0467-MR

COMMONWEALTH OF KENTUCKY            APPELLANT

|   | APPEAL FROM ROCKCASTLE CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE RODERICK MESSER, SPECIAL JUDGE |
|   | ACTION NO. 19-CR-00120-001 |

STEVEN CAMERON            APPELLEE

AND            NO. 2020-CA-0594-MR

COMMONWEALTH OF KENTUCKY            APPELLANT

|   | APPEAL FROM ROCKCASTLE CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE RODERICK MESSER, SPECIAL JUDGE |
|   | ACTION NO. 19-CR-00120-002 |

PAULA CAMERON            APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: The Commonwealth of Kentucky appeals from an order of the Rockcastle Circuit Court which granted Steven and Paula Cameron's motions to suppress evidence seized by police at a traffic stop and evidence seized from a search of their home. We find that the trial court must make additional findings before we can fully adjudicate this case; therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On May 7, 2019, Officer Ryan Messinger and another officer of the Mount Vernon Police Department were dispatched to the Cameron residence regarding a possible domestic disturbance. When Officer Messinger arrived, Ms. Cameron was in the driveway and indicated that Mr. Cameron had just left in his vehicle. Officer Messinger had witnessed the vehicle leave the scene. Officer Messinger caught up to Mr. Cameron and initiated a traffic stop. The other officer dispatched to the residence remained with Ms. Cameron.

Officer Messinger exited his vehicle and approached Mr. Cameron's vehicle. Officer Messinger made contact with Mr. Cameron and asked him

questions regarding the possible domestic disturbance. After speaking with Mr. Cameron, Officer Messinger spoke with the other officer who had remained with Ms. Cameron. Officer Messinger learned that Ms. Cameron claimed Mr. Cameron had hit her. Officer Messinger then arrested Mr. Cameron.

During the arrest, Officer Messinger asked Mr. Cameron if he "had anything on him" and Mr. Cameron indicated he had medication with him. Mr. Cameron then emptied his pockets and placed the medication bottle onto the vehicle. Mr. Cameron was then placed in handcuffs and taken to Officer Messinger's vehicle. While being put into the back of the police vehicle, the other officer on the scene brought the pill bottle to Officer Messinger's attention. According to Officer Messinger, the medication was in Mr. Cameron's name, the prescription had been filled that day for 150 Oxycodone, and the bottle was about half empty. Officer Messinger testified that while the officers were discussing the medication, Mr. Cameron stated that he did not like to carry so many pills around with him and the missing pills were at his home. Mr. Cameron also allegedly stated that he owed someone 17 pills.

Later Officer Cameron learned from the county attorney that members of the public had made complaints that Mr. Cameron had been selling drugs and that Mr. Cameron had a previous conviction for drug trafficking. Based on this information, the missing pills, and Mr. Cameron's statements at his arrest, Officer

Messinger obtained a search warrant for the Cameron residence. During the execution of the search warrant, police officers found some of the missing pills from Mr. Cameron's prescription pill bottle, one half of a Suboxone pill, and $11,000 in cash. Mr. and Mrs. Cameron were then indicted on first-degree trafficking in a controlled substance.[1]

Mr. and Mrs. Cameron later moved to suppress the evidence obtained at the traffic stop and the evidence found during the search of the residence. They argued that the search of the pill bottle was unlawful, that Mr. Cameron's statements to the police after his arrest violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the search warrant was invalid because it was based on illegally obtained evidence, and that all evidence seized should be inadmissible as fruit of the poisonous tree. The Commonwealth claimed that the search of the pill bottle was permitted as a search incident to arrest, the statements made by Mr. Cameron were voluntary, and the search warrant was valid. Alternatively, the Commonwealth argued that even if the search warrant was invalid, the officers who executed it reasonably relied on it; therefore, the evidence recovered from the residence should be admissible pursuant to the good faith exception found in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

---

[1] Kentucky Revised Statutes (KRS) 218A.1412.

A hearing on the motions to suppress was held on February 28, 2020, and Officer Messinger was the only witness to testify. On March 16, 2020, the trial court entered a one-paragraph order granting the motions to suppress. The order stated in pertinent part that

> all evidence obtained as a result of the search incident to the arrest of Steven Cameron shall be suppressed as the search extended beyond the scope of a lawful search incident to arrest and, furthermore, that any and all evidence seized or obtained as a result of the search incident to the subsequent Search Warrant shall also be suppressed as fruit of the poisonous tree.

The court then cited to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). This appeal followed.

## ANALYSIS

> Our standard of review of a circuit court's decision on a suppression motion following a hearing is twofold. First, the factual findings of the court are conclusive if they are supported by substantial evidence. The second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law.

*Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (footnotes and citations omitted).

Here, we are unable to meaningfully review this case because the trial court did not make findings of fact and did not address all the issues raised by the parties. "When factual issues are involved in deciding a [suppression] motion, the court shall state its essential findings on the record. These essential findings — a

statement of the facts necessary to the motion — are required for proper review on appeal." *Warick v. Commonwealth*, 592 S.W.3d 276, 287 (Ky. 2019) (citations, footnote, and quotation marks omitted). The trial court did not state which facts supported its conclusion as to why the search incident to arrest was unlawful, did not indicate if the statements made by Mr. Cameron were also suppressed, and did not address the Commonwealth's argument regarding the good faith exception found in *Leon*.

## CONCLUSION

Based on the foregoing, we reverse and remand. On remand the trial court should address all the issues raised by the parties and cite to sufficient facts to support its conclusions of law. Should the trial court again suppress all the evidence, the court will also need to indicate if Ms. Cameron is able to challenge the search warrant based on the impermissible search of her husband. In other words, were her Fourth Amendment rights violated by the impermissible search of her husband?[2] *Warick*, 592 S.W.3d at 281.

ALL CONCUR.

---

[2] This is sometimes referred to as Fourth Amendment standing.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEFS FOR APPELLEES:

Gregory A. Ousley
Somerset, Kentucky