Jamin ROBERSON Appellant,

v.

COMMONWEALTH OF KENTUCKY Appellee.

No. 2004–SC–001026–MR.

Supreme Court of Kentucky.

Feb. 23, 2006.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, George G. Seelig, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, Counsel for Appellee.

SCOTT, Justice.

## I. INTRODUCTION

Appellant, Jamin Roberson, entered a conditional plea of guilty to Murder and Burglary in the First Degree. As a condition to his plea, Appellant reserved the right to appeal the Warren Circuit Court's denial of his motion to suppress statements made to officers of the Bowling Green Police Department subsequent to his arrest and issuance of *Miranda* warnings. Appellant was then given a sentence of imprisonment for life. Appellant now appeals to this Court as a matter of right pursuant to Ky. Const. § 110(2)(b), arguing that the trial court committed reversible error in denying his motion to suppress statements made to police after having been read his *Miranda* warnings and requesting assistance of counsel. Having reviewed the record, we affirm the trial court.

## II. FACTS

On February 24, 2003, Appellant was arrested at a residence on Highland Way in Bowling Green, Kentucky, during the early morning hours by Detective Barry Railey and Detective Bragg of the Bowling Green Police Department for the February 21, 2003, murder of Hal Dajuan Holder during the burglary of the victim's residence. A co-defendant, Shannon, was also arrested at this time, but is not a party to this appeal. At the time of the arrest, Det. Bragg advised Appellant of his *Miranda* rights and Appellant responded by unequivocally stating that he desired to have a lawyer. Rita Taylor, Appellant's mother, was also at the residence on Highland Way and was advised that her son was being arrested for murder and that she might want to secure an attorney for the Appellant. The arresting officers also advised Ms. Taylor that Appellant would be taken to the police station and that she

could meet them there if she so desired. Ms. Taylor responded that she could not afford an attorney to act on behalf of Appellant.

During a suppression hearing on August 8, 2003 testimony revealed that, upon arriving at the police station, Det. Railey told Ms. Taylor that there was blood evidence against Appellant, that it was a death penalty case, and that there was nothing she could do for her son. In response, Ms. Taylor stated that she knew "from TV" that if Appellant spoke to the police, he might receive more favorable treatment. She then requested to speak with Appellant and was allowed to do so. Det. Railey testified that he told Ms. Taylor she could not be asked to act on behalf of the police in speaking with her son. Additionally, Appellant asked to speak with his pastor, which he was also allowed. After speaking with Appellant, Ms. Taylor informed Det. Railey that Appellant desired to speak with the detectives concerning the robbery and murder. Prior to taking any statements from Appellant, the police again read Appellant his *Miranda* rights after which he gave the incriminating statement which formed the basis for his motion to suppress. Then–Judge Tom Lewis apparently denied the motion to suppress although no order in the record reflects that ruling.

Upon retirement of Judge Lewis, former Commonwealth's Attorney Steve Wilson was elevated to the Warren Circuit Court bench. The case ultimately arrived in the division of Warren Circuit Court Judge John Grise because Wilson had been involved in Appellant's arrest and interrogation. Appellant then filed a motion to reconsider his earlier motion to suppress due to the change in court personnel. In denying the motion to reconsider, Judge Grise indicated he had some evidentiary questions that were left unanswered from the August 8, 2003, hearing. In particular, Judge Grise asked why Appellant was taken to the police station and not the jail, why his mother was asked to go to the police station, and why the Department of Public Advocacy (DPA) was not called during the Appellant's custody at the police station between 2:00 and 3:00 A.M. Subsequently, a supplemental suppression hearing was held on August 31, 2004, to address the questions raised by Judge Grise.

During the supplemental suppression hearing, now-Judge Steve Wilson testified on behalf of the Commonwealth and explained that Appellant and co-defendant Shannon were taken to the police station because Shannon desired to make a confession. Wilson also testified that Appellant's mother was asked to come to the police station because of Appellant's age at the time of the arrest (he was 19 at that time). Wilson stated that he agreed to let Ms. Taylor speak with Appellant, but told her there were no promises given concerning her discussion with the Appellant.

Det. Railey also testified at the supplemental hearing that it was not uncommon to take suspects to the police station for processing and further paperwork although he admitted that Appellant did not have to be taken to the police station to complete the paperwork. Det. Railey also stated he did not know why the DPA was not called. Further, Det. Railey testified that there had been no "plan" to get the Appellant to talk by allowing his mother and pastor to speak with him. Testimony by Det. Railey also revealed that the police had planned prior to the arrest to take both men to the police station to facilitate administrative processing of the investigation.

On September 13, 2004, Judge Grise denied the supplemental motion to suppress and found that Appellant had knowingly, intelligently and voluntarily waived

his right to counsel and right to remain silent prior to his confession and that Appellant, not the police, reinitiated communication after Appellant's previous request for counsel. In its order, the trial court noted that there was no evidence of any scheme or covert attempt to use Ms. Taylor as a conduit for the police to interrogate Appellant. Rather, the trial court found that Ms. Taylor was asked to go to the police station because she appeared interested in her son's fate and as a courtesy was allowed to go to the police station if she wished. Ms. Taylor's testimony showed that now-Judge Steve Wilson told her at the police station that there was nothing she could do and she should go home. Furthermore, the trial court found that Ms. Taylor had asked to speak to Appellant, and there was no evidence Det. Railey and the other detectives asked her to speak with Appellant for them. The trial court found that the detectives explicitly told Ms. Taylor she could not be asked to speak with Appellant on behalf of the State.

Finally, in addressing the fact that the DPA was never called, the trial court found that there was no duty on behalf of the police officers or the Commonwealth's Attorney to contact the DPA in order to secure an attorney for Appellant. Testimony showed that Wilson did not feel it was necessary to do so because he "expected no further interrogation of the defendant and an attorney ... would only have told the defendant not to talk with the police," and the police never intended to speak with Appellant anyway in light of his request for an attorney.

Appellant then entered a conditional plea of guilty to the charges on September 16, 2004, preserving for appeal the suppression issues. He was subsequently sentenced to life in prison with parole eligibility.

## III.  ANALYSIS

### A.  Standard of Review

■ This Court has held that RCr 9.78 provides the standard for appellate review of a trial court's determination regarding suppression motions. "If supported by substantial evidence the factual findings of the trial court shall be conclusive." RCr 9.78. *See also Davis v. Commonwealth,* 795 S.W.2d 942 (Ky.1990). "When the findings of fact are supported by substantial evidence ... the question necessarily becomes, 'whether the rule of law as applied to the established facts is or is not violated.'" *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998) (quoting *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996)). Our Court of Appeals had held that "[t]he second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law." *Stewart v. Commonwealth,* 44 S.W.3d 376, 380 (Ky.App.2000) (citing *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998); *Commonwealth v. Opell,* 3 S.W.3d 747, 751 (Ky.App.1999)). It should be pointed out, however, that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States,* 517 U.S. at 699, 116 S.Ct. at 1663.

### B.  Trial Court Properly Denied Appellant's Motion to Suppress

**1.  Denial of Motion to Suppress was based on substantial evidence.**

■ Having again enunciated the standard of appellate review for a trial court's determination regarding a motion to suppress, this Court must first decide if the

Warren Circuit Court's denial of Appellant's motion to suppress is supported by substantial evidence. We believe it is.

In this case, Appellant unequivocally invoked his right to have counsel present at his interrogation and to remain silent until a lawyer was provided to him. Testimony revealed, however, that his mother convinced him to speak to the police without the assistance of an attorney. Furthermore, the record shows that the police in no way coerced Ms. Taylor to speak with Appellant and likewise made no promises to her in allowing her to speak with him. Det. Railey testified that, when Ms. Taylor requested to speak with Appellant, he told her that she could not be asked to act on behalf of the police in speaking with Appellant. Moreover, now-Judge Steve Wilson testified that he told Ms. Taylor there was nothing she could do, and she should go home. However, despite these statements, Ms. Taylor spoke to Appellant, noting that she had seen these types of cases "on TV" and felt that if she could get Appellant to talk to the police, it would inure to his benefit.

After speaking with Appellant, Ms. Taylor informed the police that he wished to make a statement. Testimony presented at the supplemental suppression hearing shows that the police again read the Appellant his *Miranda* rights, which Appellant waived in making the incriminating statements to the police.

Further testimony, highlighted in the order of the Warren Circuit Court denying Appellant's supplemental suppression motion, revealed no scheme or covert attempt on the part of the police to obtain a confession from Appellant in taking him to the police station or in allowing his mother to speak with him. Appellant failed to convince the trial court otherwise.

Finally, it could hardly be surmised that Appellant did not knowingly, voluntarily and intelligently waive his right to remain silent and to have counsel present at his interrogation as evidence shows that the police read Appellant his *Miranda* rights immediately prior to taking Appellant's incriminating statements. Appellant presented no evidence to the contrary.

**2. Trial court properly denied Appellant's motion to suppress as a matter of law.**

Having found the trial court's denial of the motion to suppress was supported by substantial evidence, this Court must now determine *de novo* whether the trial court correctly applied the rule of law to the facts of this case. Finding no error in its application, we believe the trial court correctly applied the law as it exists today.

■ The warnings of *Miranda* are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). In further protecting this right, the United States Supreme Court addressed the issue of waiver in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). There the Supreme Court held that

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further com-*

*munication, exchanges, or conversations with the police.*

*Id.* at 484–85, 101 S.Ct. 1880 (emphasis added).

In a footnote, the Supreme Court in *Edwards, supra,* noted that several decisions of the Courts of Appeals have recognized that a valid waiver of an accused's previously asserted Fifth Amendment right to counsel is possible.

*See e.g., White v. Finkbeiner,* 611 F.2d 186, 191 (7th Cir.1979) ("in certain instances, for various reasons, a person in custody who has previously requested counsel may knowingly and voluntarily decide that he no longer wishes to be represented by counsel"); *Kennedy v. Fairman,* 618 F.2d 1242 (7th Cir.1980); *United States v. Rodriguez–Gastelum,* 569 F.2d 482, 486 (9th Cir.1978) (en banc) (stating that it makes no sense to hold that once an accused has requested counsel, "[he] may never, until he has actually talked with counsel, change his mind and decide to speak with the police without an attorney being present") cert. denied, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978). *See generally Cobbs v. Robinson,* 528 F.2d 1331, 1342 (2d Cir.1975); *United States v. Grant,* 549 F.2d 942 (4th Cir.1977), vacated on other grounds sub nom. *Whitehead v. United States,* 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978); *United States v. Hart,* 619 F.2d 325 (4th Cir. 1980); *United States v. Hauck,* 586 F.2d 1296 (8th Cir.1978). The rule in the Fifth Circuit is that a knowing and intelligent waiver cannot be found once the Fifth Amendment right to counsel has been clearly invoked unless the accused initiates the renewed contact. *See e.g., United States v. Massey,* 550 F.2d 300 (5th Cir.1977); *United States v. Priest,* 409 F.2d 491 (5th Cir.1969). Waiver is possible, however, when the request for

counsel is equivocal. *Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979) (en banc). *See Thompson v. Wainwright,* 601 F.2d 768 (5th Cir.1979).

*Id.* at 486, 101 S.Ct. 1880.

■ While it is true that Appellant did request the services of an attorney, there is no law to support any notion that the police or the Commonwealth's Attorney was responsible for securing such services, although they routinely do. The United States Supreme Court has also addressed this issue. *"Miranda* does not require that attorneys be producible on call, but only that the suspect be informed … that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Duckworth v. Eagan,* 492 U.S. 195, 204, 109 S.Ct. 2875, 2881, 106 L.Ed.2d 166 (1989).

Although case law certainly supports Appellant's right to be free from interrogation once he asserts his right to counsel and right to remain silent, waiver of this right can and did occur in this case when Appellant reinitiated conversation with the police, albeit at the suggestion of his mother. On this point, we note several cases where an accused's relative speaks with him prior to his waiving the rights addressed herein.

In *Adkins v. Commonwealth,* 96 S.W.3d 779 (Ky.2003), the defendant's brother asked the police if he could speak to the defendant so that he may be able to encourage him to confess, thereby gaining a more favorable plea bargain. There, as here, the Appellant urged this Court to find that the relative was an agent of the police in encouraging him to confess to his crime. In that case, this Court stated that "[i]t is well-established that only 'state action' implicates a defendant's rights under the Fifth and Sixth Amendments of the United States Constitution and Section

Eleven of the Constitution of Kentucky." *Id.* at 790 (citing *Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986)). This "state action" was further construed to apply to situations where private individuals are used to facilitate "custodial interrogation" on behalf of the police. This Court has previously described two circumstances where such would be the case.

In the first, the private entity is acting in accordance with a court order or governmental regulation and is thus viewed as a "state actor." *See Adkins,* 96 S.W.3d at 791. "The second circumstance occurs when the government otherwise 'exercised such coercive power or such significant encouragement that it is responsible for [the private party's] conduct." ' *Id.* (quoting *United States v. Garlock,* 19 F.3d 441, 443 (8th Cir.1994)). Finding the second circumstance applicable in *Adkins,* this Court found that it was immaterial that the police knew the brother's intentions to encourage the defendant to confess.

> [The officer] was not required to bar the jailhouse doors simply because he knew that a member of Appellant's family intended to induce him to confess. And, when [the brother] expressed his desire to share information relevant to the murder investigation, [the officer] was not required to refuse to listen. If any coercion occurred here, it was applied by Appellant's own brother, not the police.

*Id.* at 791–92.

Similarly, in *Arizona v. Mauro,* 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987), the United States Supreme Court found no "functional equivalent" of custodial interrogation when, in the presence of two officers, a wife was allowed to speak with her husband following his arrest and the giving of *Miranda* rights. Despite the fact the officers knew that the defendant might incriminate himself, the Court found the statements admissible and held that under both *Miranda* and *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the defendant in that case was not interrogated. *See Mauro,* 481 U.S. at 527, 107 S.Ct. at 1935.

This Court believes *Adkins* and *Mauro, supra,* applicable to the case at bar. Testimony has shown the Appellant's mother freely volunteered to speak with her son to encourage him to confess in order to gain more favorable treatment. No evidence was offered to rebut such a claim; the officers testified they gave her no promises and reiterated that she could not be asked to speak with Appellant on behalf of the state. The statement was admissible and the trial court properly ruled as such. Accordingly, this Court finds the Appellant was not subjected to custodial interrogation or its functional equivalent when his mother asked to speak with him, thereby prompting his waiving of his *Miranda* rights and giving of the incriminating statement, and we hold that Appellant voluntarily, knowingly, and intelligently waived his right to have counsel present at his interrogation and his right to remain silent when he reinitiated communication with the police.

For the reasons stated above, we affirm the judgment of the Warren Circuit Court.

All concur.