# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 18, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0340-MR

RANDALL BAYS                                           APPELLANT

V.                 ON APPEAL FROM KNOX CIRCUIT COURT
HONORABLE MICHAEL O. CAPERTON, JUDGE
NO. 23-CR-00108-001

COMMONWEALTH OF KENTUCKY                   APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Knox County jury convicted Randall Bays of first-degree trafficking in a controlled substance (first offense, methamphetamine, over two grams) and being a first-degree persistent felony offender ("PFO"). He received a total sentence of twenty years' imprisonment and appeals to this Court as a matter of right.[1] Having carefully reviewed the record, law, and briefs, we affirm.

On September 30, 2022, Barbourville Police Detective Adam Townsley received a tip from a known confidential informant ("CI") that Bays would be traveling that day from Louisville to Knox County with a quantity of methamphetamine. The CI stated Bays would be driving a gold Buick LeSabre

---

[1] KY. CONST. § 110(2)(b).

with the license plate number, BTX-241, and also advised that Bays would have two passengers with him, one female and one "non-female."

Detective Townsley relayed this information to Officer Karl Middleton, a patrolman with the Barbourville Police Department. Later that day, Officer Middleton spotted Bays driving a gold LeSabre with the license plate number, BTX-231,[2] instead of BTX-241, and began to follow him. There was a single female passenger in the car who was later identified by police as Stacie Goley. After Bays crossed the center line of the roadway multiple times, Officer Middleton initiated a traffic stop.

When Officer Middleton approached the vehicle, Bays explained that he crossed the center line because he was trying to turn the cruise control off. Bays was unable to provide Officer Middleton with valid proof of insurance. Officer Middleton asked Bays if there were any illegal substances in the car to which Bays replied in the negative. At this point, Officer Middleton asked Bays to exit the vehicle to perform field sobriety tests ("FSTs"). As Bays was exiting the vehicle, Officer Middleton requested consent to search the vehicle. Bays consented to a search of the interior of the vehicle.

Around the time the FSTs were completed, a K9 unit arrived on the scene. Officer Middleton estimated that no more than ten minutes had elapsed from the initial stop of the vehicle and the arrival of the K9 unit. At this point, Goley was asked to exit the vehicle. When Goley exited the vehicle, officers

---

[2] At some point, it was determined this vehicle was not registered to either Bays or his passenger.

observed her throw a small bag of suspected methamphetamine onto the ground. The K9 unit then conducted a free air sniff around the outside of the vehicle. The dog alerted to the presence of controlled substances on the driver's side door. Based on the positive indication from the dog sniff and the observation of Goley's attempt to dispose of suspected methamphetamine, the officers searched the entirety of the vehicle. In the trunk, officers discovered over two pounds of suspected methamphetamine concealed inside two coffee cans. Bays and Goley were then placed under arrest. At the time of arrest, approximately forty-five minutes had elapsed from the commencement of the initial stop.

Bays was indicted on charges of first-degree trafficking in a controlled substance (first offense, methamphetamine, two or more grams), failure to produce an insurance card, careless driving, and PFO 1.[3] He filed a motion to suppress the evidence obtained as result of the warrantless search. Following a hearing at which Officer Middleton was the sole witness,[4] the trial court denied the motion in an order entered on March 27, 2024.

Bays proceeded to a jury trial after the denial of his suppression motion and was found guilty of first-degree trafficking and PFO 1. The Commonwealth had previously dismissed the charges of failure to produce an insurance card and careless driving. The trial court sentenced Bays to a total of twenty years'

---

[3] Goley was also charged with first-degree trafficking in a controlled substance. The present appeal concerns only the charges against Bays.

[4] There was no bodycam recording of the traffic stop and arrest.

3

imprisonment in accordance with the recommendation of the jury. This appeal followed.

Bays' sole argument on appeal is that the police impermissibly extended the duration of the initial traffic stop in violation of the Fourth Amendment of the United States Constitution. In support of this contention, he presents two related claims. First, he argues the mission of the stop was not diligently pursued because Officer Middleton had no basis to require the performance of FSTs. Second, he argues Officer Middleton lacked reasonable and articulable suspicion to investigate for drugs at the outset of the traffic stop. Bays concedes both these claims are unpreserved and requests palpable error review.[5]

RCr[6] 10.26 authorizes an appellate court to review an unpreserved error as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a

---

[5] We note Bays argued below that the stop was improperly prolonged based on a theory that the mission of the initial stop was completed *after* the performance of the FSTs. He has not pursued this argument in his briefing to this Court. Therefore, this claim of error has been abandoned. *Halvorsen v. Commonwealth*, 671 S.W.3d 68, 74 (Ky. 2023).

[6] Kentucky Rules of Criminal Procedure.

4

different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND IV. "All warrantless searches are unreasonable, per se, under the Fourth Amendment unless an established exception applies." *Payne v. Commonwealth*, 681 S.W.3d 1, 3 (Ky. 2023). "The Commonwealth bears the burden of satisfying the requirements of a claimed exception." *Id.* at 4.

"We review a trial court's decision on a motion to suppress on two levels." *Id.* "First, we must 'determine whether the trial court's findings of fact are supported by substantial evidence.'" *Id.* (quoting *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002)). "If so, they are conclusive. *Id.* Second, we must 'conduct a de novo review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.'" *Id.* (quoting *Neal*, 84 S.W.3d at 923).

Pertinent to the validity of the findings of fact, Bays disputes the trial court's characterization of his driving as "erratic." Bays correctly notes that Officer Middleton did not specifically term his driving to have been "erratic." However, as the factfinder, the trial court is permitted to make all reasonable

5

inferences from the evidence. *Roberson v. Commonwealth*, 185 S.W.3d 634, 637 (Ky. 2006).

Officer Middleton testified he observed Bays cross the center line multiple times. Numerous courts have described the crossing of the center line as erratic driving. *See, e.g., State v. Marshall*, 8 A.3d 1086, 1090 (Vt. 2010) (holding that crossing of center line justified traffic stop regardless of the duration and degree of violation); *People v. Goestenkors*, 662 N.E.2d 574, 578 (Ill. App. 1996) ("Erratic driving, such as crossing the center line, is sufficient to justify an investigatory stop."); *State v. Sulser*, 871 P.2d 126, 127 (Or. App. 1994) ("[W]eaving within a lane and touching or crossing the center line are examples of erratic driving that may indicate driver impairment."); and *State v. Brodeur*, 493 A.2d 1134, 1138 (N.H. 1985) ("The defendant committed a traffic violation when he drove his vehicle over the center line, and that act alone justified [officer's] decision to stop the defendant."). Moreover, in his briefing before the trial court, Bays conceded he "was pulled over for careless driving" and further acknowledged "the only lawful purpose of the traffic stop in this case" included the performance of FSTs. Thus, we discern no basis to second-guess the trial court's use of the word "erratic" to describe the manner in which Bays operated his vehicle.

In addition, Bays faults the trial court for "selectively adopt[ing]" Officer Middleton's statement "that consent was provided when Randall had exited the vehicle and before the FSTs were conducted." In the order denying the motion

to suppress, the trial court acknowledged Officer Middleton's testimony on the issue of consent was conflicting.[7]

Officer Middleton admitted to having difficulty remembering the precise timeline of events and was questioned by the parties and trial court on multiple instances to clarify this point. Officer Middleton initially testified that he requested consent to search at the time he asked Bays to exit the vehicle. He also stated he asked Bays for consent during the performance of the FSTs. At another time, Officer Middleton generally characterized his request for consent as having occurred during his investigation of the traffic stop and confidential tip. In response to questioning by the trial court, Officer Middleton again stated that he "thought" and "believed" the request for consent was made at the time he asked Bays to exit the vehicle.

"When confronted with inconsistent testimony or other conflicting evidence at a suppression hearing, the trial court, as factfinder, is entitled to weigh the evidence and judge the credibility of the witnesses." *Osborne v. Commonwealth*, 718 S.W.3d 622, 627 (Ky. 2025) (citing *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007)). "This rule applies whether the inconsistencies arise from the testimony of a single witness or within the context of the overall proof." *Id.* The mere possibility that a factfinder could

---

[7] We note that Bays argued before the trial court that Officer Middleton's testimony at the suppression hearing also contradicted his prior testimony at the preliminary hearing. However, there is no indication the trial court was provided with a recording or transcript of the preliminary hearing. Similarly, the present record on appeal does not contain such a recording or transcript.

draw conflicting or inconsistent interpretations from the evidence does not preclude such a finding from being supported by substantial evidence. *Id.*

This is not a situation where "the trial court disregarded crucial undisputed testimony essential to the situation we address." *Commonwealth v. Conner*, 636 S.W.3d 464, 471 (Ky. 2021) (quoting *Turley v. Commonwealth*, 399 S.W.3d 412, 418 (Ky. 2013)). Instead, the trial court merely exercised its discretion to weigh conflicting evidence. As an appellate court, we are not permitted to substitute our assessment of the weight and credibility of Officer Middleton's testimony for that of the trial court. *Payne*, 681 S.W.3d at 4. Thus, we deem the trial court's findings of fact to be conclusive and proceed to examine the application of the law to the facts.

Consistent with the Fourth Amendment, it is well-established that a police officer may reasonably "conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred." *Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016) (quoting *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013)). If there is a probable cause that a traffic violation has occurred, then a police officer may stop the vehicle regardless of the officer's subjective motivations. *Id.* However, "an officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot." *Id.* at 292 (quoting *Turley*, 399 S.W.3d at 421).

8

"[T]here is no *de minimis* time exception" to this rule. *Id.* at 293. "[T]he key inquiry is not whether the stop is extended beyond its natural conclusion; rather, the Court must consider whether the officer's conduct (e.g., asking unrelated questions or conducting a sniff test) adds any amount of time to the stop." *Carlisle v. Commonwealth*, 601 S.W.3d 168, 175 (Ky. 2020). To determine whether a traffic stop was improperly extended, this Court has applied a three-part analysis:

> First, was the traffic stop ongoing or had it concluded? Second, if the stop was ongoing, did [the officer] inquire into matters unrelated to the stop's mission? Third, if the officer inquired into unrelated matters, did his inquiries prolong the stop?

*Id.*

Bays contends Officer Middleton "impermissibly extended the traffic stop to administer FSTs without any testimony about his observations or justifications for doing so." We decline to review whether Officer Middleton had independent reasonable suspicion to conduct the FSTs because Bays conceded the point in the trial court below.

Our precedents recognize "[t]he valid waiver of a known right precludes appellate review while a forfeited claim of error may be reviewed for palpable error." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). Moreover, when a party concedes a point of fact or law before a trial court, the issue is generally waived and cannot be raised thereafter on appeal in an argument contrary to the concession. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72–73 (2013).

9

Before the trial court, Bays argued the purpose of the initial stop had been completed or abandoned *after* the time the FSTs were *performed*. Specifically, Bays stated in his trial court briefing that he

> was pulled over for careless driving, and Field Sobriety Tests were performed. This was the only lawful purpose of the traffic stop in this case – and anything beyond this exceeds the lawful scope of the traffic stop.

We perceive this argument constitutes an admission that the performance of the FSTs related to the initial purpose of the stop. Bays should not be heard to contend otherwise for the first time on appeal. Because Officer Middleton inquired into the presence of illegal drugs and requested consent to search at the outset of the stop before the performance of the FSTs, we conclude the stop was ongoing and turn to the question of whether such inquiries were unrelated to the purpose of the stop.

Our precedents distinguish between matters specifically incident to a traffic violation and the conduct of a generalized criminal investigation. *Commonwealth v. Clayborne*, 635 S.W.3d 818, 824 (Ky. 2021). "For example, pulling someone over and checking their license and registration are squarely within the objectives of issuing a traffic ticket." *Id.* at 824-25. In addition to such ordinary incidents of a traffic stop, an officer may properly address related safety concerns because "the government's officer safety interest stems from the mission of the stop itself." *Rodriguez v. United States*, 575 U.S. 348, 356 (2015).

For safety purposes, "[i]t is well settled that a police officer may, as a matter of course, order the driver of a lawfully-stopped vehicle to exit the

10

vehicle." *Carlisle*, 601 S.W.3d at 179. We have also approved inquiries into a suspect's criminal history under the rubric of officer safety. *Id.*

"A dog sniff, by contrast, is a criminal investigation unrelated to addressing a traffic violation." *Clayborne*, 635 S.W.3d at 825. Importantly, the law allows a police officer to "conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Carlisle*, 601 S.W.3d at 174 (internal quotation marks omitted) (quoting *Rodriguez*, 575 U.S. at 355).

In *Carlisle*, we left open the question of whether a police officer's inquiry into the presence of drugs in a vehicle was "unrelated to the traffic stop's purpose and improperly prolonged the stop." *Id.* at 179 n.2. Here, Officer Middleton did not testify regarding any safety concerns or precautions associated with the stop of Bays' vehicle. Notably, Officer Middleton asked Bays solely about the presence of "illegal substances" and had also stated the investigation of the CI's tip was "the main reason for the stop." Under these circumstances, we conclude the questioning relative to drug possession was unrelated to the stop for careless driving. *See Davis*, 484 S.W.3d at 294 ("The only reason for the sniff search was to discover illegal drugs . . . which adds nothing to indicate if the driver is under the influence and is clearly beyond the purpose of the original DUI stop.").

Having determined the inquiry into drugs and the request for consent to search were unrelated to the mission of the stop for careless driving, we must

11

now resolve the ultimate issue of whether these unrelated inquiries prolonged the duration of the stop. During a lawful detention, police are not required to base or support each separate question with independent reasonable and articulable suspicion. The Supreme Court has "held repeatedly that mere police questioning does not constitute a seizure." *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of the individual[.]" *Id.* (quoting *Bostick*, 501 U.S. at 434–35).

Thus, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citing *Muehler*, 544 U.S. at 100–01). Moreover, this Court has recognized "that concurrent operations may provide an exception to our no-extension rule: 'When it comes to pursuing unrelated investigative issues, officers must be able to do so while simultaneously completing the purpose of the stop.'" *Clayborne*, 635 S.W.3d at 826-27 (quoting *Commonwealth v. Mitchell*, 610 S.W.3d 263, 270 (Ky. 2020)).

Here, Officer Middleton requested consent to search at the time he asked Bays to exit the vehicle to perform FSTs. In other words, Officer Middleton was *in the process* of conducting his investigation into the initial purpose of the stop at the time he made the unrelated inquiry into the possession of contraband.

12

Significantly, Officer Middleton also continued to diligently pursue the investigation relative to the initial stop by conducting the FSTs after he obtained consent to search. As a practical matter, we perceive no substantial distinction between the present circumstances and the situation where an officer inquires into the presence of contraband and requests consent to search while conducting other investigative duties and safety precautions such as securing the scene and awaiting the results of license, registration, and warrant checks. *See, e.g., Carlisle*, 601 S.W.3d at 176. Thus, on the present record, we cannot conclude Officer Middleton's inquiry into drug possession and the request for consent to search improperly prolonged or extended the duration of the stop.

In addition, the fact that Officer Middleton remained in the process of attending to the initial traffic violation critically distinguishes the present appeal from our decision in *Commonwealth v. Smith*, 542 S.W.3d 276 (Ky. 2018). In *Smith*, we concluded a traffic stop had been improperly prolonged where the officer had entirely abandoned the purpose of the stop by neglecting to conduct *any* investigation into the traffic violation and focusing instead on a generalized drug investigation from the outset. Based on this salient distinction, we cannot conclude *Smith* controls the outcome here.

Because Officer Middleton obtained Bays' consent to search without improperly prolonging the initial stop, we hold the free air sniff search of the exterior of the vehicle was valid and, in turn, ultimately ripened into sufficient

13

probable cause to conduct the warrantless search of the trunk.[8]  *See Meghoo v. Commonwealth*, 245 S.W.3d 752, 756 (Ky. 2008) (holding exterior canine sniff alert supports probable cause to conduct warrantless search of vehicle). Similarly, we conclude independent reasonable and articulable suspicion was not required to justify Officer Middleton's inquiries into drug possession and request for consent despite the fact these matters were unrelated to the mission of the initial stop.  *Johnson*, 555 U.S. at 333.  Therefore, we need not separately address Bays' argument relative to whether the CI's tip provided independent, reasonable and articulable suspicion to conduct a drug investigation.

For the foregoing reasons, the judgment of the Knox Circuit Court is affirmed.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Jennifer Wade
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General

---

[8] Bays does not dispute that the results of the sniff search coupled with the officer's observations of Goley's attempted to dispose of suspected controlled substances provided probable cause for a warrantless search of the entire vehicle.

14